## Sayre *against* Frick.

Joint owners of a bill who jointly endorse the same, do not thereby constitute themselves partners *quoad hoc*, so that notice of the dishonour of the bill to one will charge both: it is but a joint contract, and each must have notice in order to charge him.

ERROR to the Common Pleas of *Northumberland* county.

This was an action of debt by the Commonwealth for the use of Bazaleet Sayre against John Frick, founded upon the official bond of the defendant as a notary public. The breach assigned was, that a note which became due and-payable at the Northumberland Bank, was handed to the defendant for protest, and that the same was protested, but that the notice of protest was given only to one of the endorsers, and the notice to the other was directed erroneously to a different place than where the endorser lived, whereby he was discharged. The note was as follows:—

"Ninety days after date I promise to pay, at the Bank of Northumberland, to the order of Edwin Dyer and Lewis Saynish, $575, without defalcation, for value received.

WILLIAM HAGENBUCH,<br>('Covington,' in pencil mark).

(Endorsed,)    LEWIS SAYNISH, ('Blossburg,' in pencil mark).<br>EDWIN DYER, ('Covington,' in pencil mark).<br>CHARLES SEELY, ('Covington,' in pencil mark)."

The proof was that the residences of the endorsers were put upon the note by the cashier, when he handed it to the defendant. The note was duly protested, and notice given to Edwin Dyer and Charles Seely, through the Post-Office, but the notice to Lewis Saynish was directed to "Wellsborough," where he did not live, and he did not get it in time to charge him as an endorser.

The court below instructed the jury that the joint endorsement of Lewis Saynish and Edwin Dyer, constituted them partners, as to this transaction, and that notice to one was notice to both, and therefore the plaintiff was not entitled to recover in this action.

*Hegins,* for plaintiff in error, argued that the joint endorsement was but a joint contract, and that each of the parties to it were entitled to notice of the dishonour of the bill, and cited *Chitt. on Bills* 497; 1 *Saund. Plead. and Ev.* 288; 6 *East* 43; *Douglass* 653; 9 *Mass.* 334; 2 *Conn.* 654; *Bailey on Bills* 159; 4 *Cowen* 126; 2 *Marshall* 616; 1 *Penn. Rep.* 147; 15 *Wend.* 482.

*Jordan* and *Greenough,* contra, argued that although one cannot, without a contract of partnership, create a new liability for another, yet he may preserve the existing conditional liability which they are jointly under, and one may receive notice for both, and both are thereby charged. 16 *Law Lib.* 101; *Byles on Bills* 166; 1 *Camp.* 83; *Chitt. on Bills* 297. 49; 16 *Serg. & Rawle* 372; *Cro. Eliz.* 675; 2 *Wash.* 300.

The opinion of the Court was delivered by

GIBSON, C. J.—It is singular that the sixty years which have passed since *Carvick* v. *Vickery* (2 *Doug.* 653) was before the King's Bench, have not brought up, a second time, among a people so commercial as the Anglo-Saxon race, the point which the verdict left in so much uncertainty. The text-writers seem to be at a loss how to treat that case; whether as an authority for the principle adopted by the court, or as an authority for the opposite principle subsequently adopted, with Lord MANSFIELD's assent, by the special jury. Some of them seem to have taken a middle course, and considered it an authority for both. The insufficiency of commercial usage, as a criterion of principle, is shown by the fact that a verdict founded on evidence of it, settles nothing but the contest in the cause; and that when repeated verdicts in the same way have emboldened the Judges to take notice of it, it is their sanction, after all, and not the inherent force of the usage itself, which gives it the consistence and stability of a rule. The verdict in *Carvick* v. *Vickery,* which settled the cause, if it settled nothing else, certainly unsettled the rule laid down by the court, which might else have taken root; and as I do not find that the point has been adjudicated a second time, it weighs much, with me, that the bench and the bar were satisfied with the event. The text-

[Sayre v. Frick.]

writers seem to have taken different views of the case. Gow cites it, for the position taken by the court, that the drawers, having made the bill payable to their order, had made themselves partners as to the transaction; and Cary does the same, saying, that the right of transfer was in all of them, not in any one of them individually: strange premises for such a conclusion! On the other hand, Chitty, who also lays down the rule in obedience to the decision of the court, adds a *quære;* and Byles puts the case, as an illustration of the rule, that holders who are not partners, can transfer their right only by joining individually in the act of endorsement. Watson cites it to prove that the question depended on usage; and he consequently goes with the jury. Collyer intimates no opinion in respect to it; and Montague I have not at hand. Mr Justice STORY cites the case to prove, that if a bill be made payable or endorsed to several persons not in partnership, the transfer can be effected only by the immediate act of all; a consequence that could not ensue if they were made partners in the transaction by the very drawing of the bill. Now all but Gow concur, that, whether the payees were partners or not, the individual interests of all could be transferred only by the individual act of each; and on the same principle, each would be separately entitled to notice of dishonour. The only case, subsequent to it, which approaches the point in any shape, is *Jones* v. *Radford,* (1 *Camp.* 83, *note*). It was that of an action against the acceptor of a bill drawn in favour of two, but endorsed by one; and the plaintiff recovered, not because the payees were partners, but because the defendant was precluded, by his acceptance of the bill thus endorsed, from contesting the regularity of the endorsement. It is scarce necessary to remark, that the notion of partnership was out of the question. The weight of professional opinion, therefore, is decisively adverse to the rule laid down by the court in *Carvick* v. *Vickery,* and consonant to reason, as well as the verdict of the jury. If partnership, as it has been said, is a contract of association in a business or trade, on terms of furnishing the capital and sharing the profit or loss, the mere joinder of personal rights and responsibilities, as parties to a negotiable instrument, does not constitute it. What contract is there on the face of a bill or note, between parties to it, who, in contemplation of law, are one? None is expressed; and the law implies none which it does not imply between all joint contractors whatever, without regard to the character of the instrument. Why should joint parties to a bill or note be more necessarily partners than are joint obligors? The endorsing of a bill or note is not a business or trade; and the employment of that form of security to create a responsibility, is no proof that the parties were engaged in a mercantile operation. We may therefore safely decide, on the ground of principle as well as professional opinion, that as these endorsers were only joint owners of the note, the notice of

dishonour, received by one of them, was not notice to the
other.

Judgment reversed, and a *venire de novo* awarded.